Judge Green,
delivered the opinion of the Court.
All the pleadings in this case having been set aside in the Superior Court, by consent, and the cause remanded to the County Court, where the defendant pleaded, and the plaintiff replied de novo, our attention is of course confined-to this last set of pleadings. The first plea is, that the defendant in the original action, (Ryburn,) appeared according to the condition of the bond; which the defendant was ready to verify by the record. Upon this plea, the plaintiff took issue, and it was decided by the Court against the defendant. The third plea states the return by the Sheriff, “ that the defendant Ryburn was in custody;” and that a copy of the bail-bond was also returned: that, thereupon, a judgment was rendered in the office against Ryburn, and the bail, the defendant in this action; which was reversed in the Court of Appeals, and final judgment given for the hail; and relies, that the cause of action, upon which the Court of Appeals pronounced judgment for the defendant, *460 was the same as that now asserted by the plaintiff. To this, the plaintiff replied, repeating, in substance, the facts stated in the plea, and traversing that the two suits were for the same cause of action. The defendant, de- • murred, .and the demurrer was rightly over-ruled; for, the judgment of the Court of Appeals, even if given in relation to the same cause of action, was given between other parties, and not being given on the merits of the contrat t. is no bar to this action.
The only real question in the cause, arises upon the te~ cond plea, and the replication thereto; to which the defendant demurred. That plea states the suing out of the original writ against Ryburn; the demand for bail; the execution of the writ; the commitment of Ryburn to jail for want of bail; and the return of the writ by the Sheriff, that Ryburn was committed to jail, for the want of appearance bail; and avers that Ryburn was, on the return-day of the writ, actually in the custody of the Sheriff a? appears by the record; so that the bond became a nullify, and of no effect; and concluded with a verification.
The plaintiff replied, admitting the suing out of file writ—its execution—the commitment of Ryburn to ja I, and the return and endorsement of the writ, as stated in the plea; but avers, that after the endorsement on the writ, and before the return-day, the bail-bond was executed, and Ryburn discharged from custody; and, that he was not in custody at the return-day of the writ; and concludes to the country. To this the defendant demurred, and assigned for causes of demurrer, that the replication was not a full answer to the plea, and that it was repugnant to t be record set forth in the plea.
The reference to the record in this plea, did not make that record a part of the plea. It was equivalent to the usual expression in a plea, stating the effect of the record, as to the point relied on, “as appears by the record;” unless the other party had denied the effect of the record, as stated in the plea, by taking issue thereon: or alledgod *461 dial something further appeared by the record, which he relied upon to obviate what was relied upon by the defendant, and upon which new allegation the' defendant took issue. It was not competent to the Court, to look into the record referred to in the pleadings, to see if it established any matter which the parties, in their pleadings, had not alledged to exist. In this case, the Court ivas to determine upon the demurrer, and not whether the record proved what was admitted by the pleadings, or proved something which was not averred by the parties in their pleadings. The record of the suit,, referred to in the plea, although copied by the Clerk into the record in this case, cannot ho considered properly as any part of this record,, The allegation of iho plea, “ that so the bond became a nullity, and of no effect,” is mere surplusage, being a conclusion of law, and not an averment of fact; and the conclusion, “and this he is ready to verify,” although imperfect for the want of the addition of the words “by the record,” is not so defective as to bo objectionable on a general demurrer; although it would, he on a special demurrer for that cause. It is virtually an affirmation, that he was. ready to verify the matter of the plea hv the record, as it could he verified iu no other way. The case then presented is, that the defendant aJIedgos that It. appeared by the record and the Bheriff’s return, that liyburn was actually in custody for the want of bail. The replication admite, that it does so appear; but insists, that the return was not true, and was made by mistake; that is, that the endorsement on the writ, was true when made, to wit; several days before the return-day; but, that after the. endorsement was made, liyburn was discharged upon the, bail-bond being given, and the endorsement on the writ not altered; and for this he puts himself upon the country.
The first enquiry then is, whether it is competent to the Sheriff to contradict his own return. It seems to me that he cannot. It is a matter of record to which he is privy; and although he may amend big return, by leave of the *462 Court, until it is amended, it must be taken to be true as to the Sheriff himself, who has made the return. This has been decide'd in the Supreme Court of Massachusetts. Pennington v. Loring, 7 Mass. Rep. 388. In that case, in a suit against the Sheriff for selling property without a due notice of the sale, he having returned on the warrant that he had advertised 24 hours, whereas the law required that he should advertise 48 hours; he offered to prove that his return was a mistake, and that, in fact, he did advertise 48 hours. But, the Court unanimously determined, that it was not competent to the Sheriff to give such proof, although it might have been said, that it did not contradict the return. I think the same point has been decided in the Supreme Court of New York. If this be law, then, upon these pleadings, it must be taken that Ryburn was in custody at the return-day of the writ; for, that js the legal import of the return stated in the pleadings, and that fact would discharge the bail.
If a defendant be let to bail, and on the return-day of the writ, he surrendered himself in custody, it would discharge the bail. The act of 1645, chap. 14, Hening’s Stat. at Large, vol. 1, p. 305, prescribes what shall be the substance of the bail-bond, “with condition to bring forth the party arrested, or perform the award of the Court;” and, upon this latter expression it was, that the bail, if he failed “ to bring forth the party arrested,” was liable to a judgment in that cause, against himself; but, if he brought forth the party, he was discharged. (See the act.) This statute was repeatedly re-enacted, but never repealed until January 1, 1820. If the surrender of the principal in custody on the return-day, would not discharge the bail, then it might happen, that he would have no means of discharging himself. If he lived, he might enter special bail, and so discharge himself as appearance bail. But, if he died before the return-day, judgment might be given against his estate, even if no executor or administrator had qualified; and the principal might not have it in his *463 power, to prevent such consequence, unless his surrendering himself in custody would have that effect. Such a surrender, though not an appearance, would have the effect of an appearance. See Rev. Code, 1792, chap. 67, § 20, 23; chap. 66, § 32.
But, suppose it were competent to the Sheriff to contradict his return; then, upon these pleadings, the case would be, that the Sheriff, having taken bail and discharged the defendant, nevertheless returned that the defendant was in custody when he was not. The effect of which was, that no judgment could be had, if the defendant failed to appear, either against the principal or bail; and the plaintiff could only proceed, either in the same suit by alias capias, or in a new suit against the Sheriff for his fals.e return. And if, in the event of the plaintiff’s proceeding against the Sheriff, the Sheriff could maintain his suit upon the bail bond, and the bail were subjected, the latter would have his remedy after paying the money, either by action or by motion, under the act of Assembly against bis principal. Until the Sheriff had suffered damage from the breach of the condition of the bond, he could not sue upon it, and consequently, the bail could not resort, with any effect, to a bill quia timet. If the Sheriff had made a true return, and a judgment had been regularly entered against the bail, lie would have been immediately entitled to an attachment against Ryburn, and, without the necessity of paying the money, might have had Ryburn’s property sold, and applied to the payment of the debt for bis indemnity. The first act which authorised a judgment against the bail, authorised this attachment against the principal. 1645, 1 Hen. Stat. Large, chap. 14, p. 305. These provisions wero introduced, both for the benefit of the creditor, and of the bail; and gave the bail a much better chance of indemnity than he before had, by expediting his remedies. This remedy of the bail was utterly frustrated by the Sheriff’s false return; and, although other more tedious and uncertain remedies remained to him, and *464 although he might have discharged himself from his rcsponsibility. of appearance-bail, by taking upon himself the obligations of special bail, yet his situation as appearancekail may have been preferable to.that of special bail, since Ryburn may have left the State and left property behind him. But, whether the one or the other situation was preferable, the act of the Sheriff deprived the bail of his election, and varied his situation. His failure to make a true return was, (to use the expression of one of the English Judges,) contrary to the faith of the contract. Nothing is better settled in Courts of Equity, than that any act of the creditor, which deprives the surety of any remedy which he has for his indemnity, discharges the surety.' The cases on this subject are referred to in Norris v. Crummey, lately decided. If such an act is apparently or manifestly for the benefit of the surety, lie is nevertheless discharged; for, he ought to be the sole judge of his own interests, and ought not to be deprived of his legal rights, without his assent. Samuel v. Howith, 3 Meriv. 272. These principles of the Court of Equity have been adopted in Courts of Law, and applied to the case of bail. Moore v. Bowmaker, 6 Taunt. 379; Willison v. Whitaker, 7 Taunt. 53; Melville v. Glendening, 7 Taunt. 126; Rathbone v. Warren, 10 Johns. Rep. 587.
It is not necessary to enquire, whether the erroneous judgment entered by the Clei'k against the bail, as appears by the third plea- and replication thereto, ought .to have any effect upon the liability of the bail, or his discharge from liability, under the second plea and replication; since that fact cannot enter into the consideration of a plea and replication, in which its existence is not averred. The matter of one plea or replication cannot be considered as incorporated with another. Every plea or replication should be, in itself, a complete bar, or answer to the bar; and every omission or defect, cannot be cured, by reference to other parts of the pleadings.
*465 Nor is it an answer to the proposition, that the bail is discharged by the failure of the Sheriff to make a proper return, (thereby depriving the bail of one of his legal remedies, for his indemnity,) to say, as was said at the bar, that even if the proper return had been made, the bail might have been adjudged insufficient; and thus have lost that remedy, wThilst he would have remained liable to the Sheriff. That was one of the risques of the undertaking of the bail; but, it was a contingent, and, if the Sheriff did his duty even to himself, an improbable hazard. The Sheriff, by failing to make a proper return, has made this contingent hazard a certainty.
The judgment oyer-ruling the demurrer to the replication to the second plea is, therefore, erroneous, and to be reversed, and judgment, thereupon entered for the defendant.